Abraham Schlissel, J.
Defendant is here being prosecuted for an alleged violation of chapter 9, article 1, section 9-105.13 of the Municipal Code of this city in that on the 7th day of June, 1966, he “ did wilfully, wrongfully and unlawfully maintain a parking lot at Kentucky Street and Ocean Front in a Business ‘ B ’ district ”.
The stipulation submitted to the court in lieu of the tender of oral testimony establishes, among other things:
(a) Defendant’s employment as manager of an eating and drinking establishment known as Danny’s Place, and located at the place mentioned in the information above quoted;
(b) That these premises consist of a building, a patio and a paved area which, on June 7, 1966, was being used for parking purposes by five or six of the customers and employees of Danny’s Place}
*219 (c) That neither defendant nor Danny’s Place employed an attendant at said parking area or made any charge for parking thereon; and
(d) That on the day in question, Danny’s Place held both a New York State liquor license authorizing it to conduct a restaurant, bar and grill at the stated location, as well as a City of Long Beach mercantile license for like use.
It was further stipulated that the premises in question were located in Business “B ” District on June 7, 1966 and that, through incorporation by reference from section 9-105.12 into 9-105.13, the use of such premises as and for the operation of a restaurant was lawful.
Reference to chapter 9 of our Municipal Code reveals that section 9-113 thereof provides (18) that “ for restaurants, night clubs, tearooms, lunch counters or the like, one parking space (shall be provided) for each four seats, plus such additional space for employee parking as the Building Commissioner shall deem necessary ”.
It also appears (§ 9-105.13) that any use lawful in a Business “A” District is permitted in a Business “B” District, whereas (§ 9-105.12) “ any use permitted in any Residence District ’ ’ is equally valid in a Business “ A ” District. Furthermore section 9-105.1 (referring to Residence “A” Districts) authorizes (7) “ accessory uses customarily incident to any use permitted by the provisions of this section ”.
By subdivision 1 of section 9-104 the expression “ accessory use or building ” is defined as “a use or building incident to and located on the lot occupied by the main use or building
In the light of the foregoing the court has concluded and now decides that the defendant’s use of the parking area here involved was lawful and proper as an authorized accessory use of the building as a duly-licensed bar, grill and restaurant, and that the instant prosecution must fail.
It seems to the court that to hold otherwise and to sustain the present charge would make a mockery of the provisions of the Municipal Code and nullify the actions of the city in issuing a mercantile license authorizing conduct at these premises of the very business now being conducted thereat.
It is noted, in this connection, that as a matter of common knowledge, no business such as this could long survive without some means of parking of the vehicles of patrons and employees. Certain it is that the absence of such off-street parking facilities would quickly give rise to a proper prosecution for violation of the minimum off-street requirements of section 9-113 above quoted.
*220 This court adopts as its own the following most cogent and apposite language of Mr. Justice Harris of the Supreme Court, Brie County, in Buffalo Park Lane v. City of Buffalo (162 Misc. 207, 215-216): “ From early days hotels provided hitching posts and stables for the conveyances of their guests and in more recent years it has become the practice in large cities for places of public entertainment or in which the public gathers in large numbers to provide automobile parking space on adjoining lands. Of the latter, there are dozens of instances in the city of Buffalo and many within short distances of the premises in question. The court has no hesitancy in saying that in its opinion the provision and use by apartment hotels of parking space for guests is a necessary incident of the business of an apartment hotel and in relation to the Zoning Ordinance an accessory use of the premises of the apartment hotel (Zoning Ordinance, § 15, subd. A). So this court holds that in so far as its own premises are concerned, Buffalo Park Lane, Inc., has a right to provide for its guests upon such premises parking facilities for their automobiles.”
It is here specifically noted that the court is now considering and deciding a severely limited issue, i.e., whether defendant’s stipulated use of this parking area on June 7, 1966 was wrongful and unlawful, as alleged in the information here under consideration.
Its conclusion that it is neither does not imply or import any other or further views beyond those here expressed. Specifically this court has not been required to pass upon and has not even considered the question whether defendant was required to have a parking license or a curb-cut permit or any other form of municipal authorization.
This determination is and must be construed as limited to the single specific issue submitted to the court. The information herein is therefore dismissed.